**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| DARIUS JOYNER,<br><br>*Plaintiff*,<br><br>vs.<br><br>AMAZON.COM SERVICES LLC,<br><br>*Defendant*. | Civil Action No. 23-1136<br><br>**COMPLAINT and<br>DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Darius Joyner ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against Defendant Amazon.com Services LLC ("Defendant" or "Amazon") alleging as follows:

### NATURE OF THE ACTION

1. This is a complaint for employment discrimination brought under 42 U.S.C. § 1981 ("Section 1981").

### PARTIES

2. Plaintiff is a Black man and a citizen of the State of Maryland. When the events gave rise to this action, Plaintiff was employed by Amazon at the DCA1 facility in Sparrows Point, Maryland in Baltimore County.

3. Amazon is a corporate entity based in the State of Maryland. At all times pertinent hereto, it operated the DCA1 facility and employed Plaintiff.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 because the action arises under the laws of the United States, specifically, Section 1981. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Baltimore County, Maryland, which is situated within this judicial district.

## FACTS

6. In or around March 2019, Amazon hired Plaintiff as a Packer earning $15.25 per hour at the DCA1 facility.

7. In or about March 2019, Plaintiff began to excel at his job, regularly achieving a pack rate between 120-180 packages per hour, approximately two to three times the hourly quota of 60 packages per hour.

8. In or about March and April of 2019, Plaintiff regularly received high praise for his abnormally fast pack rates via "shout-outs" on the pack-side PA system for Packers who surpass the pack quotas.

9. In or about March and April of 2019, Plaintiff regularly observed other workers get screamed at, and "cursed out" because of low pack rate numbers that were also announced over the pack-side PA system.

10. In or about March and April of 2019, Plaintiff won "Amazon Swag Bucks" approximately six times in periodic competitions for packing speed and accuracy. "Amazon Swag Bucks" are coupons with no monetary value that can be redeemed for Amazon apparel.

11. In or about March and April of 2019, Plaintiff received high praise from his pack-side Floor Manager, a White man named Brandon, because of his accelerated mastery of Amazon's packing processes.

12. In or about March and April of 2019, Plaintiff was passing by the workstation of a Black coworker, Amos, and observed Brandon screaming and cursing at Amos, because Amos had purportedly ripped boxes during the "re-binning" process, during which Associates sort boxes from one bin to another. Brandon then said to Amos and Plaintiff "you people make me so damn mad." Plaintiff and, on information and belief, Amos, believed that Brandon was referring to Black people when he said, "you people."

13. In or about April 2019, Brandon approached Plaintiff and commended him on his work ethic and packing speed, then suggested that Plaintiff apply for the open position of Trainer on the pack-side.

14. In or around April 2019, Brandon insisted that if Plaintiff was to apply for the Trainer position that he would highly recommend Plaintiff for the position.

15. In or around April 2019, Brandon suggested to Plaintiff that he, Brandon, was the *de facto* decision maker for the hiring of the open Trainer position because of his close relationship with the actual decision, an Operations Manager whose actual name could not be determined after reasonable due diligence. This Operations Manager is referred to herein as "John Doe 1."

16. In or around April 2019, Plaintiff applied for the open Trainer position, believing he had Brandon's support.

17. In or around April 2019, Plaintiff began operating in a limited capacity as the packing Trainer, when he was to train new-hires or struggling packers on how to achieve high pack rates comparable to the rates that he was commended for in March and April.

18. In or around April 2019, approximately five workers were struggling with their pack rate numbers and asked Plaintiff for help. Brandon was aware that Plaintiff was operating in this capacity and allowed Plaintiff to continue to help his coworkers.

19. In or around April 2019, Brandon requested that Plaintiff help approximately three other workers who were either new hires or struggling with their pack rate numbers. Again, Plaintiff performed Trainer job duties in assisting his coworkers.

20. In or around April 2019, Plaintiff had a newborn child at home and his productivity dropped slightly from his normal 120-180 packs per hour, but remained well-above the 60 per hour quota required of pack-side workers. Plaintiff continued to train and assist his coworkers. Plaintiff believes that his drop in productivity below his normal 120-180 packs per hour rate caused resentment from Brandon because the Floor Manager's numbers were derived from the Packer's pack rates.

21. In or around late April 2019, Plaintiff was responsible for training a new-hire, a White man, on how to work on the pack-side. This new hire's name could not be determined after reasonable diligence and he is referred to herein as "John Doe 2".

22. In or around late April 2019, while training John Doe 2 on how to work on the pack-side, Plaintiff asked John Doe 2 what position he was being hired to work in, and John Doe 2 responded that he was being hired for the open Trainer position that was promised to Plaintiff.

23. On or around May 5, 2019, Plaintiff's pack rate numbers for the day had dropped to around or slightly below the 60 packages per hour quota, which triggered a PA announcement, that alerted Brandon.

24. After the PA announcement of Plaintiff's numbers, Brandon approached Plaintiff's station and says, "I know you can move faster than that, nigger."

25. Plaintiff was immediately offended and visibly angered and needed to take a bathroom break to regain his composure.

26. Immediately after he left the bathroom, Plaintiff approached Kat, a Black woman, and the whole floor's Outbound Manager, and reported the incident, including Brandon's use of the "N word." As the floor's Outbound Manager, Kat was Brandon's direct supervisor. Kat reported directly to the Operations Manager John Doe 1, who was a close friend of Brandon.

27. Once Plaintiff told Kat about the statement that Brandon made to him, Kat said that this behavior was uncalled for, not to worry, and that she would "handle it." On information and belief, Kat took the matter to her direct supervisor, John Doe 1.

28. On or about May 7, 2019, John Doe 2 was promoted into the Trainer role that he was trained for by Plaintiff, and that Plaintiff was told that he would likely get.

29. On or about May 12, 2019, about a week after the incident with Brandon, Plaintiff approached Kat to inquire about the status of his complaint. Kat told Plaintiff that she had raised the complaint to John Doe 1, the Operations Manager, and that Kat, John Doe 1, Brandon, and Plaintiff were going to sit down for a meeting.

30. Subsequently, Plaintiff noticed that Brandon was keeping his physical distance from Plaintiff, but Brandon would make eye contact with Plaintiff and scowl at him in an intimidating manner.

31. Plaintiff was anxious to have the meeting to clear the tension and to ensure Brandon's behavior would not happen again, but the meeting never materialized.

As a result of feeling unprotected from Brandon's hostility and discouraged from Defendant's inaction, as well as feeling not valued because he was denied the Trainer position and forced to train a White employee with less experience and seniority for the position, Plaintiff felt like

the working conditions were so poor that he could not stay at the job. Accordingly, Plaintiff was constructively discharged on or around May 19, 2019.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1981.
### [Race Discrimination]

32. Plaintiff adopts by reference and incorporates paragraphs 1 through 32 as if fully set forth herein.

33. Plaintiff was, at all times relevant hereto, employed by Defendant.

34. Plaintiff is a Black man.

35. As an employer within the meaning of Section 1981, Defendant owed at all times a duty to Plaintiff not to discriminate against him on the basis of his race in the enforcement of his employment contract with respect to promotion and other terms, conditions, or privileges of employment.

36. As set forth above, Defendant intentionally discriminated against Plaintiff based on his race, when it refused to hire him into the Trainer position, and instead hired a less-tenured and less-qualified White man who Plaintiff was forced to train, in violation of Plaintiff's federally protected rights.

37. Amazon's intentional discrimination is evidenced by Brandon's racial slur against Plaintiff—specifically—his use of the N word, as well as his referring to Plaintiff and Amos as "you people" in reference to their race, and its failure to investigate or take remedial action based on Plaintiff's complaint of race discrimination.

38. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

39. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life and career.

40. At all relevant times, Plaintiff met Defendant's legitimate performance expectations and was qualified for the position of Trainer.

41. Defendant also discriminated against Plaintiff by subjecting Plaintiff to additional requirements that his similarly situated White coworkers were not subject to, because of his race, namely, requiring him to perform Trainer duties, without title or compensation.

42. Defendant treated similarly situated employees outside Plaintiff's protected category more favorably because Defendant did not subject White employees to adverse actions based on race. For example, Plaintiff had a slight decrease of his normal productivity and was subjected to adverse race-based actions that his White coworkers were not subjected to.

43. Defendant's conduct had the purpose and effect of substantially interfering with the Plaintiff's employment and created an intimidating, hostile, and offensive employment environment.

44. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

45. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against Defendant in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II

### 42 U.S.C. §1981.
### [Retaliation]

46. Plaintiff adopts by reference and incorporates paragraphs 1 through 33 as if fully set forth herein.

47. Plaintiff engaged in protected activity when he complained of race discrimination.

48. Defendant retaliated against Plaintiff after he engaged in protected activity, subjecting Plaintiff to adverse actions, including intimidation, denying him the Trainer position, and subsequently constructively discharging Plaintiff.

49. There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

50. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

51. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A. Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights under federal law;

B. Award Plaintiff compensatory damages against Defendant;

C. Award Plaintiff punitive damages against Defendant;

D. Award Plaintiff damages for emotional distress against Defendant;

E. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

F. Award Plaintiff his reasonable attorneys' fees and expenses;

G. Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

DATED: April 27, 2023

                                                       Respectfully Submitted,

                                                      THE LAW OFFICES OF KIM PARKER, P.A.

                                                      /s/ Kim Parker

                                                      _____

        Kim Parker, Esquire
        Fed Bar. No: 23894
        2123 Maryland Avenue
        Baltimore, Maryland 21218
        O:410-234-2621
        F: 443-486-1691
        E:kp@kimparkerlaw.com

        COUNSEL FOR PLAINTIFF

## JURY TRIAL PRAYER

Plaintiff prays for a jury trial on all counts.

        /s/ Kim Parker
        _____
        Kim Parker, Esquire